UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


FRANCEKY LAPLANTE,

      Petitioner,

v.                                      Case No. 6:13-cv-747-Orl-37GJK

SECRETARY, DEPARTMENT
  OF CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

      This case is before the Court on the amended petition for habeas corpus relief filed by Petitioner pursuant to 28 U.S.C. section 2254 (Doc. No. 21).  Upon consideration of the amended petition, the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted.  Thereafter, Respondents filed a response to the amended petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 23). Petitioner filed a reply (Doc. No. 26) to the response.

      Petitioner alleges three claims of ineffective assistance of counsel.

**I.**    ***Procedural History***

      The State charged Petitioner by information with two counts of capital sexual battery.  A jury found Petitioner guilty of both counts.  The trial court adjudicated

Petitioner guilty of the crimes and sentenced him to life imprisonment as to each count, with the sentences to run concurrently. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising three claims. The state trial court entered an order denying claims one and two and granting an evidentiary hearing as to claim three. After the evidentiary hearing, the trial court entered an order denying claim three. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

While the Rule 3.850 proceeding was pending, Petitioner filed a petition for writ of mandamus, which the state appellate court dismissed.

## II.   *Legal Standards*

### A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

---

[1]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.     Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   *Analysis of Petitioner's Ineffective Assistance of Counsel Claims*

### A.   *Claim One*

Petitioner argues that his trial counsel, Mauricio Hued, failed to prepare a viable defense based on the "second suspect theory."  *See* Doc. No. 21 at 5.  Petitioner states that his stepson, Joquin Williams, had molested the victim's sister in the past; that Williams was at the house where the victim resided on the day of the crimes; that Petitioner left the house for approximately one hour; and that, when he returned, Williams was gone, and the victim was in her mother's bed crying hysterically.  *Id.*

According to Petitioner, Williams was a "second suspect" in this case.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because evidence of Williams' prior crimes would not have been admissible and because Hued attempted to admit evidence that Williams was a sex offender and had contact with the victim.

The record reflects that Hued attempted to present this defense at trial.  During opening argument, Hued stated that "you will also hear that the alleged victim's brother is a sex offender . . . ."  App. B at 8.  At that point, the prosecutor objected, and, after argument by both the prosecutor and Hued, the trial court sustained the objection. *Id*. at 10.  The trial court indicated that the issue could be raised through proffer during the cross-examination of the victim.  Hued then concluded opening argument, stating, in relevant part, that "there will be evidence that will point to the fact that there may be someone else." *Id*.

Prior to the cross-examination of the victim, Hued sought to introduce evidence of Williams' sex offender status. *Id*. at 40.  The trial court heard argument on the issue and allowed proffer examination. *Id*. at 42.  The trial court then heard further, extensive argument on the issue and ultimately ruled that such evidence would not be admissible during the testimony of the victim. *Id*. at 53.   However, the victim did testify that she remembered Williams touching her sister inappropriately, going to the juvenile detention center, and being placed on probation. *Id*. at 213-14.

Prior to Petitioner's testimony, the admissibility of this evidence was again argued by the parties.  The trial court ruled that Hued could ask Petitioner whether he

6

witnessed any sexual activity involving the victim but Hued could not mention the past crimes of Williams.  *Id.* at 129.  Hued subsequently asked Petitioner if he ever saw Williams touch the victim inappropriately or do anything in bed with the victim.  *Id.* at 158-76.  The trial court held further argument on the issue during Petitioner's testimony. Petitioner eventually testified that he witnessed Williams touch the victim inappropriately and "wrestling in the bed" with the victim.  *Id.* at 158-60, 177-79. Petitioner also mentioned that he saw Williams touch the victim's sister inappropriately.  *Id.* at 172.[3]

During closing argument, Hued mentioned that there had been a "previous accusation" involving Williams and the victim's younger sister.  *Id.* at 228.  He also argued that the victim knew Williams was on probation and that the victim "may not want him to go away" to jail.  *Id.* at 229.  Hued also reminded the jury that Petitioner testified that there had been "inappropriate play" between Williams and the victim and urged the jury to consider that the victim may not have wanted Williams to go to jail. *Id.* at 230-32.

Clearly, Hued attempted to present this defense on numerous occasions, and, in fact, successfully brought this issue to the jury's attention.  Hence, Petitioner has failed to demonstrate the Hued acted deficiently with regard to this matter or that he

---

[3]After Petitioner made that statement, the State immediately requested a bench conference.  The State objected to Petitioner testifying about Williams' sexual abuse of the victim's sister, and the trial court instructed Petitioner to only respond to the questions being asked.  *Id.* at 172-76.

sustained prejudice.  As such, Petitioner has failed to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, the Court rejects this claim.[4]

**B.    Claim Two**

Petitioner argues that Hued failed to investigate DCF reports and records, which would have supported "a defense of the second suspect."  *See* Doc. No. 21 at 8. This claim was raised in Petitioner's Rule 3.850 motion and was denied because the evidence would have been inadmissible.

This argument is without merit.  First, as discussed with regard to claim one, Hued repeatedly tried to admit evidence dealing with Williams' sexual abuse of the victim's sister.   In fact, Hued presented such evidence through Petitioner's own testimony and the victim's testimony.

Next, this evidence would not have been admissible.  As discussed by the state appellate court in *Reichenberg v. Davis*, 846 So.2d 1233 (Fla. 5th DCA 2003), records of DCF are inadmissible as a business record because the records contain witness

---

[4]In addition, Petitioner has failed to demonstrate that this evidence was admissible.  "'Reverse *Williams* rule' evidence is evidence of a crime committed by another person that a defendant offers to show his or her innocence of the instant crime."  *McDuffie v. State*, 970 So. 2d 312, 323 n.2 (Fla. 2007) (citation omitted).  The admissibility of this evidence requires the defendant to show "close similarity of facts, a unique or fingerprint type of information . . . ."  *Id.* (citations omitted) (quotation omitted).  Petitioner has not demonstrated that this evidence involved a close similarity of facts or a unique or fingerprint type of information.

statements made to investigators, the substance of which is not within the personal knowledge of the agency employee.

Consequently, there has been no showing that Hued acted deficiently or that Petitioner sustained prejudice.  As a result, Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  Thus, Petitioner is not entitled to federal habeas relief on this claim.

C.      *Claim Three*

Petitioner states that Hued failed to call Lebien Fabre (Petitioner's uncle) and Claude Milsap (a friend) to testify at trial.  He states that Fabre would have testified that, on the day of the crime, he (Fabre) saw Williams, the victim, and the victim's sister all together at the home.  According to Petitioner, Fabre would have also stated that he, Petitioner, and Milsap left the home for about one hour and, when they returned, Williams was gone, and the victim was crying and said Williams had hurt her. Ostensibly, Milsap would have corroborated Fabre's version of events.  This claim was raised in Petitioner's Rule 3.850 motion, and the trial court held an evidentiary hearing on the claim.  The trial court denied the claim because Fabre's testimony was not credible and because Hued would not have presented Fabre's testimony.

Hued testified at the evidentiary hearing that he would have called Fabre and Milsap as witnesses if Petitioner had informed him that they saw the victim crying and

9

heard her say that Williams hurt her.  *See* App. O, Transcript of Evidentiary Hearing, Part 1 at 6.  Fabre testified at the evidentiary hearing that Petitioner was with him "during that whole day" when the crimes occurred, but he could not recall the date other than "it was in 2002."  *Id*. at 22-24.  Fabre never testified that he saw the victim crying or that the victim accused Williams of wrongdoing.

It is clear that Fabre's testimony was not credible or beneficial since he could not recall the applicable date and he did not offer any testimony with regard to seeing the victim on the day of the crimes.  Moreover, Hued stated that he would have presented this testimony if had been informed by Petitioner.  Finally, Petitioner has not offered any evidence establishing what testimony Milsap would have provided.

Under the circumstances, Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice.  As such, Petitioner has not established that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  Consequently, Petitioner is not entitled to federal habeas relief on this claim.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus (Doc. No. 21) filed by Franceky LaPlante is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[5]    Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 29th day of October, 2014.

ROY B. DALTON JR.
United States District Judge

---

[5]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

Copies to:
OrlP-2 10/29
Franceky LaPlante
Counsel of Record